182194 Autonomous Municipality of Ponce versus the Financial Oversight Management Board for Puerto Rico et al. Good morning, Your Honors. May I please report? Sorry. You will wait until our clerk sits down, please. Thank you. Okay, now proceed. Good morning. May I please report? Carlos Fernandez on behalf of Municipality of Ponce. We request streaming of a pre-vote over the copy pasta, Your Honors. How many minutes? Three. Three. You may have it. Yes, Your Honor. In this issue of appeal, we have the Title III Court denying a 362 motion for lifting the stake for the Municipality Autonomous of Ponce, requesting the opportunity to continue the Ponce Marcha case in which they are requesting as equitable remedy the opportunity to fulfill some projects that was agreed more than 20 years ago, history of 1992. The Municipality of Ponce and the Government of Puerto Rico comes to an agreement that was breached in 1994 and was decided on 1996 from the Court of Ponce and after that was decided by the Supreme Court of Puerto Rico on the year of 2000. Since year of 2000, the Court of Ponce is handling and monitoring the oversight the construction project that was granted on that agreement. There's 19 years of oversight from that monitor of those projects. Right now, after almost completion, roughly 90% of the project was completed at that specific time. The Government, the Central Government and some of these other actors as PREPA, as Highway Authority of Transportation filed the Title III case and then they request to stay not just the project but also the equitable remedy of the oversight that the Government of Ponce and the case of Ponce Marcha are doing to those projects. We understand that the Court of Puerto Rico, the Title III Court, first of all, adjudicating that this is a claim when this is not a claim. This is not a debt that the Government of Puerto Rico got and the Municipality of Ponce will receive. On appeal, you're making, I believe, three categories of arguments. The first is this was never subjected to the automatic stay because you say it wasn't a claim to which the automatic stay applies. The second is, well, even if the automatic stay applied, nonetheless, the trial judge erred in, the Title III judge erred in not granting our motion to lift this stay. And the third subsidiary argument is, in any event, we should have been given an evidentiary hearing and oral argument. Have I got that right? Yes, you are. Okay. So let's go back to the first ground because you did not argue that to Judge Swain. Yeah, that's correct. But as a matter of law, this is a strictly legal issue and there's a certitude on the record. We understand that if this District Court will rule on the claim, if there's a claim or not, we're going to miscarry an unjustified judgment that we've got right now. Counsel, on that issue, if it's not a claim, you clearly are trying to enforce a judgment that you obtained years ago from the Commonwealth Court. It's that judgment that required the completion of these projects. I think there's also a monetary settlement as well. So you have that judgment. You're in the process of trying to enforce it. These stays do apply to judgments. That seems clear. So what difference does it make if what you're seeking is not, in fact, a claim? What you are seeking is the right to proceed with the benefit of the judgment that you got from the Commonwealth Court. And those judgments are stayed. Isn't that true? I stay as a judgment, but we request this. We've got a cost to lifting the stay in order to complete those projects. Because in this particular case, there's extraordinary circumstances as both debtor and mortgage are public entities, ruling by public policy, fiscal policy. And this is important because the government must, as part of the Title III case, restructuring his debts in order to continue operating, pay his expenses, bring the basic needs to their citizens, and improve the quality of life. And those public projects are on the same path. Are not debts. Are public projects to increase or better the quality of life of the people of Ponce, but also of people of Puerto Rico. And lifting the stay for cost, as we understand, we got, we bring that opportunity to the municipality of Ponce to continue with the executory, the equitable remedy to oversight those projects and... But, counsel, the district court acknowledged the importance of these projects to Ponce. She took that into consideration, but she has to take a global look, if you will. She has to consider what's at stake for the entire commonwealth as it attempts to get out of this very difficult debt situation. And so she talked about the effect of having to pay money to complete these projects, would have on the financial situation of the three entities that we're talking about, the effect it would have on other creditors who are in a position comparable to Ponce. So she took all of that into account, and she made this kind of balancing judgment that she had not shown cause to lift the stay. So, again, she wasn't insensitive to what you're talking about, but it was just one of many factors that she had to consider, and she made a different balancing judgment. Why wasn't she entitled to do that? Well, Your Honor, we didn't know the judge ruling analyst, as there's no procedural opportunity to argue the proper cause in this particular case. And also, Your Honor... That's not true. In the end, you will, once the Title III court makes whatever adjustments it's going to make, you will have a hearing, but you're not going to get it now on the nature of your claim. So you're being treated like all other creditors or people with judgments against the Commonwealth. We see just a fraction of what the Title III court sees in terms of people who want to get priority in the hearing of their claims, and they have asked for relief from the stay. But our standard of review is abuse of discretion for relief from the stay. And as Judge Lopez has said, it's hard to see why there's any abuse of discretion here. Well, Your Honor, as a matter of fact, when the court... Are you simply afraid the Commonwealth is going to run out of money and it will never be able to do these projects in Ponce? As a matter of fact, there's one specific project or two specific projects from one specific debtor, specifically the Highway Transportation Authority, that they're not staying in that project. They're continuing to work as we speak. Because those construction projects are funded with federal money from the Federal Highway Authority. Okay, so you're lucky about that. But what does that have to do with the case in front of us? But in this particular and specific issue, the court staying, the Title III court staying, the opportunity of Municipality of Ponce to oversight those construction that are already occurring right now, and that's a harm that the District Court, the Title III court doesn't see as far as those construction that was occurred from the stay to today was not oversight by the Municipality of Ponce. Wait a minute. I'm having trouble following what you're saying. So we have two projects that are continuing. Yes. Without the oversight that you want, are you concerned about the quality of the work being done? Exactly, Your Honor. The quality and the fulfilled. The quality and the what? Excuse me? The quality and the what? You said quality and something. Well, the issue in construction as far as in Ponce and Marcia, the monitor that was appointed is an engineer and a lawyer. They have both titles, both knowledge. And brings specifically to all the engineers meetings in all those projects. And has he refused to be involved in these two projects that are going on? Yes or no. Has he refused to be involved? He wants to be involved in the monitor, but they were kicked out by the State. Yes or no. He is not involved? He is not involved right now. And that is because he is not being paid. Is that it? It's not. That's incorrect. The State Court has... And he is afraid of violating the State by getting involved? I don't understand. As far as there is an equitable remedy of oversight of those projects. And that is a specific equitable remedy was not permitted, was stayed by the Title III case. We got a harm. We understand that it's cost to leave the State in this particular case, Your Honor. And the monitor got paid not just from the Highway Authority Transportation, was paid from all those debtors that are, all those parties that are not also debtors. There is other entity asking. Okay. Your time is up. You have reserved three minutes. Counsel, from your point of view, what is this lawsuit about? Yes, Your Honor, and good morning. May it please the Court. My name is John Roberts from the law firm Proskauer Rose, and I represent the appellee. The issue in this appeal, as you ask, Judge Lynch, is whether the District Court acted within its discretion when it declined to lift the automatic stay to allow the appellant to jump ahead of other creditors and enforce its unsecured claim against the debtors in the Title III cases. As I'll explain, the District Court did not abuse its discretion, because lifting the stay, as the appellant requests, would be unfair to other creditors and would make it more difficult for the Commonwealth to restructure and its instrumentalities to restructure their debts in the Title III cases. He seems to be focused more narrowly than the papers suggest. He seems to be focused on two projects that he says are ongoing, but they're ongoing without the involvement of the monitor. Yes, Your Honor. Those two projects are being overseen by the Highway Authority. They're paid, as my brother said, they're being paid by federal funds, so the work is continuing. Now, the monitor has been stayed as a result of the Title III stay, and as HTA mentioned in its submissions below, it would cost them money to be paying for the monitor. That's one issue that the District Court recognized would be a problem with letting the monitor, lifting the stay for the purpose of letting the monitor oversee this project. Also, as the District Court noted, allowing the monitor to be involved is just going to open the door to further litigation as to whether the project is being done exactly according to the judgment. So this specific argument was presented to Judge Sline? Yes, about HTA. You can see HTA's submission in the record. Okay. Is there a monitor involved because of the Commonwealth Court judgment? Ordinarily, highway projects funded by federal money go forward all the time without a monitor overseeing it. Is that why the monitor happens to be involved in these two projects? Yes, with all of these projects. So there was a case at the Commonwealth Court, and the Commonwealth Court ordered specific performance. As I'll get to that, under Puerto Rico law, even if money's damages are sufficient, a party is entitled to specific performance, and the AMP opted for specific performance. So there was a judgment by the Commonwealth Court ordering performance of the contract. As part of that judgment, the Commonwealth Court appointed a monitor because the Commonwealth Court said these are very complicated projects and to ensure performance we're appointing a monitor. So the monitor is under the auspices of the Commonwealth Court. I'm trying to figure out, was the monitor appointed to ensure performance or to ensure quality? Is it a quality control? And is that the primary fear, that the work is substandard? I mean, they're sort of two sides of the same coin, I think. When you're talking about performance, there were specifications in the agreement as to how these projects would be performed. So the monitor was appointed to ensure performance of the agreement. Now, at this point, the monitor and the Commonwealth Court has been, the Commonwealth case, rather, has been stayed. So HTA is now performing these projects using the federal money, but the monitor has no involvement. To go back to Judge Lopez's point, you know, the federal government has its own sort of monitoring of federal highway funds that are used. And if it's going forward and if there is an issue about performance or quality, it seems to me there are other remedies other than having a monitor that are totally independent of this Title III proceeding. Precisely, Your Honor. And there's no indication in the record that these projects are not being, you know, done with sufficient quality or anything like that. That's pure speculation to say something like that. And as you say, there are mechanisms in place to ensure the quality of the projects. So, again, I don't understand what this case is really about. And before you answer that, so we've talked about a couple of projects, and your brother counsel said that there were other projects that are not going forward. Are any of these other projects that are stated are not being done, do any of them impact safety issues of the people? No, Your Honor. So originally in the Commonwealth case there were eight defendants that were either agencies of the Commonwealth or instrumentalities of the Commonwealth. Four of those are not covered by the state, so their projects are not at issue in this appeal. The four agencies that are relevant, there's HTA, and as we said, those two projects, those two road construction projects are ongoing. There is PREPA is involved, and the projects, depending on how they're characterized, there's either two or four projects remaining. But those projects involve taking existing power lines that are on telephone poles and burying them underground. Now at page 165 of the appendix, PREPA explains that throughout the Commonwealth, power lines are on telephone poles. There's nothing different about what's going on in A&P versus the rest of the Commonwealth. This is not some sort of safety issue. A&P may prefer to have its power lines buried, but there's no safety issue there. Not until there's a hurricane. I'm sorry? Not until there's a hurricane. Yes, but I would point out that PREPA, as this Court knows, is strapped for cash, and there are many projects that involve more important safety issues for the Commonwealth, and PREPA has determined that this particular project is not one of its highest priorities. The other projects, the Housing Department has mostly completed its projects. There are a couple of projects that are not complete, and the Department of Natural and Environmental Resources, there's a couple of projects. One involves the aesthetic restoration of a lighthouse. It has nothing to do with the function. If you look at page 154 of the appendix, the Department talks about that, and there's a project involving channeling of the rivers. So there are no projects here. All of this information that you're sharing with us, I gather it reflects what was in the record and what was presented to the Title III Court when it made its decision. Is that correct? Yes, so the PREPA submission was at page 165 of the joint appendix. That's where it talks about the bearing of the power lines. The Department of Environmental Resources, I believe that's at page 154 or thereabouts in the appendix, and the HTA, as my brother said, it's not disputed that the HTA projects are ongoing. So all of this was in front of the District Court, and in fact the District Court characterized these projects in a couple of occasions on pages 8 and 10 of the opinion as municipal improvement projects. She didn't say these are safety projects, and in fact the AMP raised the safety issue below in the context of an argument based on Section 7 of PROMESA, which that argument has now been abandoned on appeal, and rightfully so given this Court's opinion in the migrant health case. Which you approved of, no doubt. Yes, Your Honor. The appellant raised the safety issue, and Judge Swain said that there's been no showing that there's safety issues here. So once again, even though the judge didn't hold a specific hearing on this matter, all of that was a matter of record before her. Yes, exactly. And in fact this Court, in the Piaget Investments v. Garcia Padilla case, which is 845 F. 3rd 505, said that in a lift-stay motion, a lift-stay motion, quote, does not require an actual hearing in every case. That's on page 512 of that opinion. What Chief Judge Howard said was that a hearing is unnecessary where the material facts are not in dispute. And here there are no material facts in dispute. The appellant was asked below to contribute to a joint status report in which the court asked what issues would you bring up if there were a hearing. And the issues that were described in the joint status report by the appellant were issues related to the precise cost of completing these projects. And what the district court said was, I'm going to assume the appellant's version of the facts. The board said it would cost more than $100 million to finish the projects. The appellant said it would take about $44 million. And the court said, I'm going to assume that the appellant is right. And even if the appellant's right on the sole factual dispute, I still will not lift the stay. There's still not cause to lift the stay. So, in fact, the appellant got something better than a hearing. He got the court to adopt his version of the facts and still did not prevail. And, you know, on this point, the appellant now in its opening and reply briefs says,  about whether or not they hold a claim. Well, that wasn't the reason why they asked for a hearing below. They asked for a hearing below to deal with these evidentiary issues about the cost. So this is just a sort of new argument, again, that's being raised on appeal, similar to the claim argument, which, as Justice Perez points out, is a bit of a red herring anyway because the automatic stay applies regardless of whether the appellant holds a claim. But your brief argues that it's both enforcing a judgment and it meets the requirements for a claim in any event. Yes, that's right, Your Honor. And I can spend a minute or two talking about that. Was that a no? I don't need it. Okay. And in addition to the fact that it is a claim, this was not an argument that was raised below. It's forfeited. It certainly was not a plain error for the district court to consider the prepetition judgment to be a claim. So once it's established that the appellant's prepetition judgment is a claim, it was plainly within the district court's discretion not to lift the stay. And here again, the standard of review is important. The decision is reviewed for abuse of discretion.  The appellant here is an unsecured creditor, so there's no argument that the stay should be lifted for lack of adequate protection, which is the normal grounds for lifting the stay. Instead, the appellant's essentially asking for the stay to be lifted solely so that it can have its unsecured claim satisfied. And the appellant cites to no case in which a court lifted the automatic stay to allow one unsecured creditor to have its claim satisfied before any other creditors receive distributions. You know, we have a large volume of these cases. You have an even larger volume in the Title III court. But to pursue Judge Thompson's thought, where there have been sustainable claims of endangerment to the public's safety, if the stay were not lifted, have there been any of those cases, and has Judge Swain lifted the stay on a showing of public safety issues? So, Your Honor, I'm not aware of any cases in which that issue was raised in a lift stay motion. We can certainly report back to the court. No, just curiosity on my part. It's not worth running up more billable hours. I appreciate that. The point from this appeal is just that that's just not an issue here. The record is clear, and Judge Swain's opinion is clear. There's no safety issue here. One can certainly, and Judge Swain, I think, was sensitive to this, can understand the dismay of Ponce at what's happened here. I mean, they've been at this since 1992 trying to get these projects completed. They thought they had a deal. After a year, the deal fell apart. They had to go to court. It took years to get a judgment acquiring these entities to go forward with the projects. They're making progress, and now it all comes to a halt. And I don't think they take much comfort when they're told that, well, eventually you can pursue a claim along with everyone else, and whatever's left over you may get something from. I mean, there is a fairness, undeniable fairness appeal to what they're saying, but in arguing that kind of fairness, they're not alone, I guess, and that was Judge Swain's call. That's right, absolutely, Your Honor. And, you know, as an equitable matter, keep in mind that the debtors here are governmental entities as well. Sure. And the appellants are asking for an order that would require these insolvent entities to spend their money to complete projects for the benefit of the appellant. But there are countless other projects involving health and safety that need to be done in the Commonwealth, and it wouldn't be proper for the court to determine that the debtors have to spend their money on these particular projects simply because there was a contract issue. One might think the health center cases actually had a better claim on getting paid, the migrant health center cases, and we said, no, that's subject to the stay even though you're not going to be reimbursed for providing basic medical services to poor people. Just to mention one of the many cases that we've had. Yes, Your Honor. If the court has no other questions, we'll rest on the papers and ask that the district court's decision be affirmed. Okay. Thank you. Yes, Your Honor. As brother counsel in the brief stated, a monetary payment equal to the value of the debtor performance will put the municipality of Ponce in the same position as the debtor has performed, and that is completely wrong because, for example, following the judge Thompson asking for safety, there is a phase three of the PREPA project to put on the ground all facilities of the downtown of Ponce in order to make the distribution system more resilient, something that was foreseen 25 years ago before we have been hit by Maria. And with $700,000 as a budget, that phase three could be finished, and those businesses and people on those specific areas could have electric system distribution. And why should Ponce be favored over San Torce, all of the other cities and towns which do not have adequate electric services from PREPA because it's out of money, it's not being run well, and they have decided this particular project is not their highest priority. So why should you be given preference over other Puerto Rican communities? It's not just a matter of preference, Your Honor, but in this particular project, the pipes are already on the ground. The manholes was already made. So it's just a matter of put the lines, connect the houses and the building, and electrify, energize the system, something that... So it would be so easy that PREPA ought to change its mind and deal with this because it's easier than the more difficult problems it's facing? Well, that's something that I really don't know and I couldn't answer right now, but as a matter of safety, that's the issue of Judge Thompson. That specific project would be finished with $700,000 approximately as a budget, but Ponce, with that money on hand, could not finish that specific project with that amount. Why? Because there's technical personnel that is needed, specialized equipment. There's Ponce making an electric distribution system that doesn't have the expertise, couldn't connect to the already system of PREPA, and also couldn't have the maintenance of those systems after that. And that specific issue could become a safety for those specific people in this area. So if you say it could become a safety issue, if at that point you have evidence it is a safety issue, you can go back to the Title III Court. But as it is right now, the Title III Court has rejected any argument that these involve safety issues. Thank you, counsel. You're welcome.